O'DANIEL et al. v. MICHIGAN MUT. LIABILITY CO.

No. 399.

United States District Court
W. D. Kentucky, Owensboro Division.

Jan. 26, 1950.

340

King & Flournoy, Henderson, Ky., for plaintiff.

Pentecost & Dorsey, Henderson, Ky., for third party plaintiff.

Byron, Sandidge & Holbrook, Owensboro, Ky., for defendant.

SWINFORD, District Judge.

The plaintiff, R. E. O'Daniel, doing business as the R. E. O'Daniel Coal Company, instituted suit in equity in the Henderson Circuit Court to have the court declare his rights under a policy of insurance and adjudge a recovery against the defendant insurance company by the terms of a contract of insurance which he alleges was in effect at the time the alleged liability on his part to third persons arose. The case is here on removal.

The insurance company denies liability under the terms of the policy and answers that the policy referred to by the plaintiff was not in effect at the time of the incident out of which alleged liability arose.

The plaintiff, a retail coal dealer, on January 30, 1948, purchased the policy in issue from the insurance company. The policy was a standard contract of liability insurance for the protection of the insured for any liability to third persons for damage to them or their property growing out of accidents in which the plaintiff's trucks or vehicles were involved while in the course of his business.

On December 29, 1948, a truck included in the coverage was involved in an accident in which third persons were injured.

The annual premium on the policy was $667.15, to be paid in installments as follows: $169.15 on February 1, and $166.00 on May 1, October 1 and November 1, 1948. The undisputed record discloses that the only part of the premium paid was as follows: $100.31 on February 2, and $50.00 on July 19, $50.00 on August 18 and $50.00 on September 27, 1948. Nothing further was paid and on October 14, 1948, he was notified by an agent of the company that he was in arrears at that time (before the November 1 payment was due) in the sum of $347.58. This notice was addressed to him at the address given in the policy, 460 South Green Street, Henderson, Kentucky. No response was made to this notice and the notice was not returned. The November 1 payment was ignored by the insured and on December 8, 1948, a cancellation letter, to which was attached a statement of ac-

count, advising him that the policy was cancelled effective at 12:01 A. M. on December 18, 1948, was mailed to him by the insurer. The letter is quoted as follows:

"R. E. O'Daniel Coal Company
460 S. Green Street
Henderson, Kentucky

"Dear Sir:
"Re: Automobile Policy No. AS825157–M
  "Cancellation Effective 12-18-48
  "Premium Past Due $487.43

"This is to notify you that your automobile insurance is hereby cancelled, effective at 12:01 A. M. Standard Time at the address of the named insured on date shown above because of non-payment of premium. If a Personal Accident Policy has been issued in conjunction with the above captioned policy, then this notice of Cancellation also applies to the Personal Accident Policy. This cancellation shall be without prejudice to any claim originating prior thereto.

"The excess of paid premium above the pro rata for the expired term, if any, will be refunded on demand.

"Should you desire to continue the insurance in force without lapse of coverage, payment in full must be received by us prior to the effective date of cancellation. The receipt and acceptance of a partial payment will not reinstate the policy.
      "Yours very truly,
        "D. W. Hickok
          Credit Manager"

The plaintiff says he never received this letter. After the accident the insured called the agent of the company who had written the insurance and reported the accident. The next day the agent, without knowledge of the letter of cancellation, called on the insured and began investigation in conjunction with the adjuster who accompanied him.

On this occasion the insured voluntarily gave the agent his check for $200.00. This check was returned by the bank on which it was drawn with the notation, "Returned on account of insufficient funds".

Upon learning of the action of his company in sending the cancellation letter the adjuster discontinued the investigation.

■ There are two questions to be determined in the decision of this case. First, was the letter actually sent by the company and received by the insured in the due course of the mails? The proof is abundant and undisputed that the letter was actually mailed on December 8. Witnesses are offered who testify positively that the letter was written and mailed from the home office of the company. Copies were received in the due course of the mails by those to whom they were sent with one exception. The agent who wrote the insurance and on whom O'Daniel called for an investigation after the accident had not received a copy. He says he was not supposed to have a copy, although the cancellation letter on its face indicates that one was at least prepared for him. This is the one fact that favors the contention of the insured that he was not notified. It is not, however, sufficient to overcome the proof to the contrary and I must conclude that the letter was mailed on December 8, 1948.

I am also of the opinion that it was received by O'Daniel or his business house at the address, 460 South Green Street, Henderson, Kentucky. He and his wife deny that the letter ever reached them. There is, of course, no direct proof to the contrary. However, in the light of the whole circumstances and apparent unbusinesslike methods followed by O'Daniel it is not illogical to conclude that a letter bearing a return address that was mailed and never returned reached its destination. Other letters addressed the same way from the same office had been received. O'Daniel was far behind in his premium payments and there are strong indications from the whole record that he was having difficulties with his finances. It is not drawing too strenuous an inference to conclude that a letter demanding payment of $487.43 would not receive immediate attention, but would be at least postponed in answering for a few days. The company had dilly dallied along with O'Daniel ever since the insurance was written.

■ I cannot say that the mailing of this letter raises a presumption that it was received. But, if circumstances at the end of the line where the letter was sup-

posed to have been received point strongly to careless or indifferent handling of mail or there is evidence of laxness in meeting demands for money due and the letter in question contains such a demand it raises a strong inference that it was received. That inference, taken into consideration with all the facts in the case, may enter into a finding of fact. That is my conclusion in the instant case. The letter was received.

The rule with reference to such presumption or inference is stated in 20 Am.Jur. Section 196. I quote:

"It is generally recognized that a presumption of the due receipt of a letter or of a communication through the mails arises upon proof that such letter or communication properly addressed to the addressee and properly stamped with sufficient postage thereon was mailed—that is, deposited in the post office or some subdivision of the postal department where mail may properly and legally be deposited for collection and transmission. This rule is now universally recognized."

The next question is strictly one of law. It may be stated thus: Is the cancellation effective under the terms of the policy in suit where the notice of cancellation is mailed even though never received?

The plaintiff contends that actual receipt of the notice must be shown.

The general rule is stated in American Jurisprudence Volume 29, Section 285, as follows:

"According to the weight of authority, a notice of cancellation mailed by the insurer does not become effective until it is received, and receipt by the insured of such notice is a condition precedent to a valid cancelation of the policy."

The plaintiff pitches his right to judgment in his favor on this general principle of law. The facts in this case take it from without this rule by reason of the terms of the policy itself.

The policy contains the following provision:

"This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."

The cases clearly sustain this provision of an insurance policy and make mailing of the notice sufficient without requiring a showing of receipt of notice. I can find no Kentucky cases in point and have been cited to none by counsel for either party. The question was directly involved in a liability insurance contract in the case of Gendron v. Calvert Fire Insurance Co., 1943, 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310. There it was held that the terms of the policy must control and in the absence of statute or state rule to the contrary, where the policy provided for notice by mailing, proof of delivery was unnecessary to effect a cancellation. To the same effect is Trinity Universal Insurance Co. v. Willrich, 13 Wash. 2d 263, 124 P.2d 950, 955, 142 A.L.R. 1, in which the court said:

"There is no statute in this state which prescribes, limits, or restricts the manner of giving notice of cancellation of casualty insurance policies of the kind with which we are here concerned, and we are aware of no reason prompted by public policy which would prevent persons from voluntarily entering into a contract containing conditions such as those set forth in the cancellation clause of the policy here in question.

"While we have no decision in this state directly upon the question here presented the more recent, and we think the better reasoned, cases from other jurisdictions sustain the validity of such cancellation clauses and hold that the mailing of written notice, in accordance with the provisions of such a clause, is sufficient, whether or not such notice is actually received by the

insured. Seaboard Mutual Casualty Co. v. Profit, 4 Cir., 1940, 108 F.2d 597, 126 A.L.R. 1105."

I do not burden this Memorandum with further citation of authorities or quotations from opinions of courts except a reference to the comparatively recent case of Seaboard Mutual Casualty Co. v. Profit, 4 Cir., 108 F.2d 597, 598, 126 A.L.R. 1105, cited in Trinity Universal Insurance Co. v. Willrich, supra. That case involved the cancellation of an automobile public liability and property damage insurance policy similar to the policy in the case at bar. I quote the following from the opinion:

"Miss Cross placed the notice of cancellation in an envelope bearing a two cent postage stamp, and directed it to McCullough at his address in Baltimore as stated in the policy, and delivered the letter to the Post Office Department in Baltimore on April 27, 1938, receiving a receipt therefrom acknowledging that it had received one piece of first class mail directed to the insured at the address on the envelope. The evidence that the notice of cancellation was mailed as described is very strong; the fact was assumed in the opinion of the District Judge which accompanied his verdict and it is not disputed in this court. The evidence as to whether the notice was actually delivered to the insured's residence and received by him was conflicting, and the District Judge found that the insured did not receive it. It is therefore important to observe that under the policy the notice of cancellation is sufficient if it is mailed or delivered to the address of the named assured stated in the policy. See Fidelity & Deposit Co. v. Riley, 168 Md. 430, 434, 178 A. 250. Both mailing and delivery are not required, and the District Judge so held."

The authorities relied upon by the plaintiff are not in point as they do not take into consideration policy provisions comparative to the one contained in this case.

■ A contract of insurance is like any other contract. The parties here agreed to a definite way in which notice became effective. Had the insured sought for any reason to cancel the policy the cancellation

would have been effective by mailing without proof of delivery. There was mutual consideration. Any other conclusion would be equivalent to this court ignoring the agreement of the contracting parties and making a new contract. The provision is reasonable and well within the bounds of public policy and must be enforced. The mailing of notice was sufficient and the policy was cancelled as of December 18, at 12:01 A. M.

A judgment for the defendant insurance company is this day entered.