No. 20745.

Margaret W. Jorgensen, et al. *v.*
St. Paul Fire and Marine Insurance Company.
(408 P.2d 66)

Decided November 22, 1965.

BENJAMIN R. LOYE, for plaintiffs in error.

WORMWOOD, O'DELL and WOLVINGTON, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THE plaintiffs in error, Margaret W. and Gilbert A.

Jorgensen, were the plaintiffs in the trial court and will be referred to as such. Defendant in error, St. Paul Fire and Marine Insurance Company, was the garnishee below, and will be referred to as St. Paul.

Originally, plaintiffs had brought suit against John Albert Bonkowske for the wrongful death of L. G. Jorgensen. Bonkowske notified St. Paul, his purported insurance carrier, of the accident in which deceased was killed. St. Paul denied any coverage of Bonkowske, although it offered to defend Bonkowske with a reservation of rights. Bonkowske refused this offer. Thereafter, default was entered against Bonkowske and judgment upon the default in the amount of $25,000 and costs was awarded the plaintiffs.

Thereafter, the plaintiffs obtained a writ of garnishment against St. Paul. The garnishment was answered by St. Paul wherein it denied any coverage under the insurance policy. This answer was traversed by the plaintiffs. The matter was heard by the court which entered findings of fact, conclusions of law and judgment in favor of the garnishee, St. Paul. From that judgment, the plaintiffs bring this writ of error.

The garnishment proceedings established the following crucial facts: On May 6, 1960, Bonkowske obtained an insurance policy from St. Paul to be in force for one year from that date. The policy protected the insured against all sums which he might become legally obligated to pay as damages for personal injury and property damage sustained by any person and arising out of his operation of the insured automobile. On May 27, 1960, Bonkowske issued his check in the amount of $47.40 for the annual premium. On June 6, 1960, St. Paul sent a notice of cancellation to Bonkowske at his address listed on the policy, effective June 17, 1960, and obtained a receipt from the United States Post Office dated June 6, 1960. On August 1, 1960, a notice of earned premium in the amount of $5.45 was sent to Bonkowske. This represented the premium which St.

Paul earned for the forty-two days during which the policy was in force. No refund of unearned premium was sent with this notice.

On September 4, 1960, the accident occurred wherein Bonkowske's vehicle struck and killed the decedent. On September 22, 1960, St. Paul's agent returned Bonkowske's original uncancelled check with a letter stating that the insurance policy had been cancelled and that the check had been found while cleaning out their files.

▮ The sole question to be determined here is whether St. Paul's insurance policy covered the Bonkowske vehicle on the date of his accident. We hold that it did not.

The gist of the plaintiffs' argument is that St. Paul is estopped to deny its coverage of the Bonkowske accident, and therefore, is liable to the plaintiffs under their writ of garnishment.

The cancellation provisions of the policy appear as follows:

"This policy may be canceled by the company *by mailing to the insured* . . . written notice stating when not less than ten days thereafter such cancelation shall be effective. *The mailing of notice as aforesaid shall be sufficient proof of notice.*" (Emphasis supplied.)

The policy goes on to state that,

"If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation becomes effective, or as soon as practicable after cancelation becomes effective, *but payment or tender of unearned premium is not a condition of cancelation.*" (Emphasis supplied.)

▮ The facts set out above establish that St. Paul complied explicitly with the cancellation provisions of its contract as stated in the policy. It therefore effectively cancelled the policy as of June 17, 1960.

▮ The plaintiffs assert that Bonkowske did not receive the notice of cancellation which was mailed to him on June 6, 1960. Actual receipt of the cancellation

notice was not by the terms of the contract a condition precedent to cancellation. The insurance contract here contains the so-called "standard form" cancellation clause. By its express terms it provides that mailing of notice shall be sufficient proof of notice. The terms of the contract, not being ambiguous, must be enforced as written and the Court cannot rewrite these terms. In the absence of a statute to the contrary, the validity of the "standard form" cancellation clause such as the one in consideration here has been upheld by the overwhelming weight of authority. See 64 A.L.R.2d 982, 1000, and the cases collected therein.

Secondly, the plaintiffs contend that the return of unearned premium is a condition precedent to cancellation, and that St. Paul's failure to return the unearned premium with the cancellation notice caused the policy to remain in full force and effect. Again, we do not agree. The contract itself specifically provides that payment of unearned premium is not a condition of cancellation. Under such circumstances, courts cannot make a new contract for the parties by construction. The rule that language in an insurance contract should be construed against the insurer cannot be applied where the language is unambiguous and there is nothing to construe.

*Leslie v. Standard Acc. Ins. Co.*, 327 Ill. App. 343, 64 N.E.2d 391, dealt with a clause almost identical to the one before us. In holding that the refund of unearned premium was not a condition precedent to cancellation, the court added that this clause makes the return of unearned premium a consequence of, rather than a condition to, cancellation. Failure of St. Paul to promptly return the unearned premium after the contract had been terminated by notice created only a debtor-creditor relationship between Bonkowske and St. Paul; it did not affect the validity of the cancellation. See also *American Fire and Gas Co. v. Combes*, (Ky.), 273 S.W.2d 37. Where, as here, there is no statute to the

contrary, courts have generally enforced the terms of the policy as drawn and have upheld the cancellation of the policy upon proper notice despite a failure to return the unearned premium. *Woodward v. Calvert Fire Ins. Co.* (Ky.), 239 S.W.2d 267; *Wallace v. State Farm Ins. Co.*, 187 Tenn. 692, 216 S.W.2d 697; 16 A.L.R.2d 1200, and the cases collected therein.

 Indemnity insurance such as is provided by the policy before us is taken out for the sole protection of the insured. The doctrine that one injured by the negligence of an assured is a third party beneficiary of the insurance contract and has rights greater than those possessed by the insured has been rejected by the overwhelming majority of cases. 8 Appleman, *Insurance Law and Practice*, § 4811. We have held that such an injured person stands only in the shoes of the insured and is subrogated only to such rights against the insurer as the insured had himself. *General Acc. Fire & Life Assur. Corp. v. Mitchell*, 128 Colo. 11, 259 P.2d 862. As applied to the case at bar, the plaintiffs could recover against St. Paul only if the insured had that right. We have already established that Bonkowske's rights under the policy had been effectively cancelled before the occurrence of the accident which caused the damage to the plaintiffs. Under such circumstances the plaintiffs here had no claim against St. Paul.

The judgment is affirmed.